# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In the WARFARIN SODIUM                    )
ANTITRUST LITIGATION                       )          MDL 98-1232 (SLR)
                                           )
This document relates to:  All Actions.    )

## AFFIDAVIT OF ROBERT J. KRINER, JR. IN SUPPORT OF SUPPLEMENTAL APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

STATE OF DELAWARE          )
                           ) ss.:
COUNTY OF NEW CASTLE       )

ROBERT J. KRINER, JR., being duly sworn, deposes and says:

1.    I am a partner with Chimicles & Tikellis, LLP ("Chimicles & Tikellis")

and participated as counsel for the plaintiffs in the following actions (the "Actions"):

(a)    In re Warfarin Sodium Antitrust Litigation, MDL 98-1232 (SLR)

(b)    Arkansas Carpenters' Health & Welfare Fund; Operating Engineers Local
       312 Health & Welfare Fund; and United Food and Commercial Workers
       Unions and Employers Midwest Health Benefits Fund   v. Dupont
       Pharmaceutical Company, C.A. No. 00-1035 (SLR)

2.    I make this affidavit in support of Chimicles & Tikellis's supplemental

application for attorneys' fees and reimbursement of expenses.  If called as a witness, I can

competently testify to the facts stated herein.

3.    In prosecuting the Actions from January 1, 2002 through March 31, 2005,

Chimicles & Tikellis devoted 46.00 hours of professional time, having a lodestar value of

$15,723.75, and incurred expenses of $2,824.13.  The hourly rates at which the lodestar has been

calculated are the usual and customary hourly rates currently charged for work performed for

other clients.  No enhancement or multiplier was employed, notwithstanding the risk of the

negotiated settlement being overturned on appeal, the complexity of the matters involved, the opposition encountered, the preclusion of other employment, the expected delay in payment, or other factors that might justify a higher rate of compensation.

4.    The requested fees were compiled from contemporaneous time reports regularly maintained by Chimicles & Tikellis in the ordinary course of business.  Likewise, the expenses for which reimbursement is requested are reflected on the firm's books and records, which are prepared from checks and expense vouchers regularly kept and maintained in the ordinary course of business.

5.    Chimicles & Tikellis's contemporaneous time reports, books and records, and checks and expense vouchers accurately reflect the time spent and expenses incurred in prosecuting the Actions.  They are available for inspection and can be produced immediately should the Court require their production.

6.    Annexed as Exhibits A and B, respectively, are charts identifying Chimicles & Tikellis's hours of professional time, and expenses incurred, in prosecuting the Actions from January 1, 2002 through March 31, 2005.

7.    No professional time, costs or expenses included in this application were spent or incurred preparing Plaintiffs' January 15, 2002, motion for an award of fees and reimbursement of costs, which covered the period from the inception of the Actions through December 31, 2001.  Likewise, no professional time, costs or expenses included in this application were spent or incurred preparing this application.

_____
Robert J. Kriner, Jr.

2

Sworn to before me this
_8th_ day of _August_, 2005

Rachel A. Mosuly.
Notary Public

RACHEL P. MOSULY
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires _12/18/07_

## IN RE WARFARIN SODIUM ANTITRUST

## LODESTAR REPORT

**FIRM:  CHIMICLES & TIKELLIS LLP**
**REPORTING PERIOD:  JANUARY 1, 2002 THROUGH MARCH 31, 2005**

| a. | Attorneys | Hourly Rate | Hours Performed | Lodestar Value |
|---|---|---|---|---|
| | Nicholas E. Chimicles | $ 600.00 | 1.75 | $ 1,050.00 |
| | Pamela S. Tikellis | $ 535.00 | 4.75 | $ 2,541.25 |
| | Robert J. Kriner, Jr. | $ 420.00 | 20.25 | $ 8,505.00 |
| | Beth Deborah Savitz | $ 220.00 | 14.00 | $ 3080.00 |
| | Brian D. Long | $ 285.00 | 0.50 | $ 142.50 |
| | | | | |
| | | | | |
| b. | **Law Clerks/Paralegals** | | | |
| | Catherine A. Aldinger | $ 140.00 | 0.75 | $ 105.00 |
| | Catherine Emmett | $ 75.00 | 4.00 | $ 300.00 |
| | | | | |

**TOTAL HOURS PERFORMED:  46.00 hours**

**TOTAL LODESTAR VALUE:     $ 15,723.75**

**EXHIBIT A**

## IN RE WARFARIN SODIUM ANTITRUST

### EXPENSE REPORT

**FIRM:  CHIMICLES & TIKELLIS LLP**
**REPORTING PERIOD:  JANUARY 1, 2002 THROUGH MARCH 31, 2005**

| Totals for | Total Amount |
|---|---|
| Hearing Transcript | $ 288.75 |
| Express Mail | $ 849.08 |
| Lexis/Research | $ 5.83 |
| Other: Letter of Credit | $ 613.89 |
| Photocopying – Firm | $ 905.50 |
| Telephone/Telecopy | $ 81.08 |
| Travel, Food, Lodging | $ 80.00 |
| **GRAND TOTAL:** | **$2,824.13** |

### EXHIBIT B

# Exhibit H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re WARFARIN SODIUM ANTITRUST LITIGATION** | **MDL 98-1232 (SLR)** |
| **This document relates to: All Actions.** | |

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING THEREON

TO:  ALL CONSUMERS AND THIRD PARTY PAYORS IN THE UNITED STATES WHO PURCHASED AND/OR PAID ALL OR PART OF THE PURCHASE PRICE OF COUMADIN® (WARFARIN SODIUM TABLETS, USP) ("COUMADIN") DISPENSED PURSUANT TO PRESCRIPTIONS IN THE UNITED STATES FROM MARCH 1, 1997 TO AUGUST 1, 2001.

PLEASE READ THIS NOTICE CAREFULLY. THIS SETTLEMENT NOTICE MAY AFFECT YOUR RIGHTS. YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF A PROPOSED CLASS ACTION SETTLEMENT. THIS NOTICE IS PROVIDED FOR THE PURPOSE OF INFORMING YOU OF A PROPOSED SETTLEMENT AND THE ALTERNATIVE COURSES OF ACTION THAT YOU MAY TAKE.

IF YOU HAVE QUESTIONS CONCERNING HOW TO MAKE A CLAIM, YOU CAN CALL 1-800-734-4655 TO LISTEN TO A PRERECORDED MESSAGE SUMMARIZING THE CLAIMS PROCEDURES OR YOU MAY ACCESS INFORMATION ON THE INTERNET AT *www.coumadinsettlement.com*. PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE OR THE JUDGE.

This Notice is provided to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and pursuant to an Order of the United States District Court for the District of Delaware (the "Court") to inform you of:

A.  A preliminary determination by the Court that this action may be maintained as a class action for settlement purposes;

B.  A Proposed Settlement on behalf of the Class, described below, which provides for, among other things:
1.  The establishment of a settlement fund of $44.5 million, plus interest ("Settlement Fund");
2.  The notification of the Class of the Proposed Settlement of this litigation and the details thereof, including the time and place of hearing and the options available; to those who would be included within the Class;

C.  The scheduling of a Settlement Hearing as described below;

D.  Your right, if the Proposed Settlement is approved, and if you are a Class Member, to file a claim sharing in the proceeds of the Proposed Settlement; and

E.  Your right to exclude yourself from the Class and the method for doing so.

*IN ORDER TO BE ELIGIBLE TO RECEIVE PROCEEDS OF THE PROPOSED SETTLEMENT AS A MEMBER OF THE CLASS YOU MUST SUBMIT A PROPERLY COMPLETED CLAIM FORM IN ACCORDANCE WITH THIS NOTICE, WHICH MUST BE RECEIVED BY THE SETTLEMENT ADMINISTRATOR, WHO IS THE COMPANY RETAINED TO HELP IMPLEMENT THE TERMS OF THE SETTLEMENT, NO LATER THAN APRIL 30, 2002.*

## BACKGROUND

A number of consumers and Third Party Payors ("TPPs") have filed class action lawsuits in federal and state courts against DuPont Pharmaceuticals Company ("DuPont"), concerning the marketing and sale of Coumadin. NO QUESTION IS RAISED ABOUT THE SAFETY OR EFFECTIVENESS OF COUMADIN. Many of these lawsuits have been transferred to the United States District Court for the District of Delaware under the name In Re Warfarin Sodium Antitrust Litigation. The suits allege that Defendant violated the law by, among other things, disseminating false and misleading information claiming that there is a lack of bioequivalence or therapeutic equivalence between Coumadin and other warfarin sodium products, and by providing consideration to entities involved in the distribution of pharmaceuticals to induce them to favor Coumadin over other warfarin sodium products, which allegations DuPont denies. Plaintiffs contend, and Defendant denies, that the questioned conduct, among other things, adversely affected the ability of consumers and TPPs to make well-informed choices among warfarin sodium products and caused them to purchase Coumadin rather than lower-priced generic bioequivalent warfarin sodium. Defendant denies that Plaintiffs' claims are true and disputes all of the allegations in the lawsuits, and Defendant believes that its conduct has at all times been lawful. These lawsuits are referred to below as the "Coumadin Litigation." There has not been a trial in the litigation and the Court has not determined whether any of Plaintiffs' allegations are correct. However, in order to resolve this and certain other related lawsuits in the Coumadin Litigation, Defendant has agreed to a settlement (the "Proposed Settlement"). In doing so, Defendant continues vigorously to deny that it violated any law.

## TERMS OF THE PROPOSED SETTLEMENT

The complete terms of the Proposed Settlement are set forth in the Stipulation of Settlement and Compromise ("Stipulation") signed by the parties, a copy of which is on file with the Office of the Clerk, United States District Court for the District of Delaware, 844 North King Street, Wilmington, Delaware 19801, and is available for review. The following is a summary of certain terms of the Proposed Settlement:

Under the terms of the Proposed Settlement, Defendant DuPont has agreed to establish a settlement fund in the amount of $44.5 million, plus interest ("Settlement Fund"). If the Proposed Settlement is finally approved after the Settlement Hearing, and dismissals are entered in the related lawsuits in other courts, then each member of the Class who submits a claim form, as set forth below, which is approved for payment, will receive payment in accordance with the Allocation and Distribution Plan generally described below.

Plaintiffs' counsel have made a thorough investigation of the law and facts relating to the allegations in this litigation and the denials thereof. The parties have engaged in extensive arm's-length negotiations which resulted in an agreement to settle this litigation as set forth in the Stipulation. In agreeing to the Stipulation, Plaintiffs' counsel considered the risks of continued protracted litigation against the Defendant and the likelihood of success, balanced against the substantial benefits to the Class which would occur as a result of the Proposed Settlement. Plaintiffs have concluded that the settlement is fair, reasonable and adequate and in the best interests of the Class.

Defendant has denied all wrongdoing and any liability to Plaintiffs and the Class and concedes no infirmity in any defense which might have been raised in the Coumadin Litigation, but nonetheless has agreed to enter into the Stipulation in order to put to rest all controversy and to avoid further expense, burden, distraction and inconvenience of litigation.

## THE CLASS

On August 1, 2001, for purposes of settlement only, the Court preliminarily certified a Class consisting of all consumers and TPPs in the United States who purchased and/or paid all or part of the purchase price of Coumadin dispensed pursuant to prescriptions in the United States from March 1, 1997 to August 1, 2001 and do not validly exclude themselves from participation under the Stipulation (the "Class" or "Class members"). "Third Party Payor" shall mean any non-governmental entity that is (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons, and is also (ii) at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy or plan. The Class does not include Defendant, any of its officers and directors and any government entity.

## ALLOCATION AND DISTRIBUTION PLAN

All claims will be valued by the following formula for consumers and Third Party Payors alike: Total payments made by a Consumer or a Third Party Payor for Coumadin minus amounts received as reimbursements, discounts or rebates x 15%. That amount will be deemed the Recognized Loss for each Class Member.

The Recognized Loss of Consumers and Third Party Payors will be paid out of the Net Settlement Fund as follows: Eighteen percent (18%) of the Net Settlement Fund will be designated for and used to satisfy the Recognized Loss of Consumers only (the "Preferential Fund"). To the extent the Recognized Loss of Consumers is not 100% satisfied from the Preferential Fund, the unsatisfied amounts of the Recognized Loss of Consumers will be paid from the remainder of the Net Settlement Fund together with the Recognized Loss of Third Party Payors on a pro-rata basis. If the Recognized Loss of Consumers is 100% satisfied from the Preferential Fund, and there remains money in the Preferential Fund, the unexpended portion of the Preferential Fund will be added to the remainder of the Net Settlement Fund for payment of the Recognized Loss of Third Party Payors.

## RIGHTS AND OPTIONS

If you are a Class Member, you have a choice as to whether or not to remain a member of the Class. Either choice will have its consequences, which you should understand before making your decision.

If you want to be eligible to receive payment from the Settlement Fund, you must submit the Proof of Claim, in accordance with the instructions thereon, which must be received by the Settlement Administrator no later than April 30, 2002, to the following address:

Warfarin Sodium Antitrust Litigation
c/o Complete Claim Solutions, Inc.
P.O. Box 24702
West Palm Beach, FL 33416

You do not need to attend the Settlement Hearing unless you want to. If you do not exclude yourself from the Class, in the manner described below, judgment issued by the court, whether favorable or not, and any release given in connection with the Proposed Settlement, will be binding upon you and you will not be able to commence or continue any other litigation, arbitration or other claim against any defendant in any other forum with respect to the settled claims. The following counsel have been approved by the Court as Co-Chair of the Executive Committee on behalf of the Class:

| | | |
|---|---|---|
| Bernard Persky, Esq. | | Marvin A. Miller, Esq. |
| Goodkind Labaton Rudoff & Sucharow LLP | and | Miller Faucher and Cafferty LLP |
| 100 Park Avenue | | 30 North LaSalle Street, Suite 3200 |

New York, New York 10017                                                                 Chicago, Illinois 60602

If you so desire, you may enter an appearance in this litigation through counsel, of your own choosing at your own expense. If you want to exclude yourself from the Class and not be included as a Class member, the Court will exclude you from the Class and the Proposed Settlement only if you complete and mail by first-class mail, postage prepaid, a Notice of Exclusion received by the Settlement Administrator by December 17, 2001. The Notice of Exclusion must include your name, address and telephone number, and if the Notice of Exclusion is provided by a representative of a settlement Class member, the capacity in which such person is acting, and the amount paid for Coumadin during the Class Period. The Notice of Exclusion must be sent by first-class mail to:

Warfarin Sodium Antitrust Litigation
c/o Complete Claim Solutions, Inc.
P.O. Box 24702
West Palm Beach, FL 33416

If you timely exclude yourself from the Class, you will not be bound by the Proposed Settlement, you will not receive the payments described above, and you will not share in the benefits of the Proposed Settlement. *If you wish to be eligible to receive your share of the settlement proceeds do not file a Notice of Exclusion.*

## SCOPE OF RELEASE AND DISMISSAL

If the Proposed Settlement is approved by the Court, then this litigation will be dismissed with prejudice. The parties also will seek dismissal with prejudice of all other related lawsuits in the Coumadin Litigation pending around the country, which contain allegations similar to those in this litigation.

The release of claims to be given to Defendant in the Proposed Settlement is broad and will, with certain exceptions, release all claims under federal and state law which you may have against Defendant and others concerning Coumadin. The full text of the release is set forth below:

"Released Claims" means each and every direct, individual, class, representative, derivative and other claim, right, action, allegation, demand, defense, counterclaim, issue, setoff, liability, penalty, and cause of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, including (without limitation) all claims for damages, restitution, disgorgement or rescission, or any other legal or equitable relief, liquidated or unliquidated, which the Releasors, or any of them, had, now has or may hereafter have against Defendant's Releasees, or any of them that relate to the marketing, promotion or sale of Coumadin during the Class Period that were or could have been asserted in the Coumadin Litigation, including (without limitation) any claims, demands or causes of action arising out of or any way relating to (1) any alleged false or misleading statement or false advertising by Defendant concerning Coumadin or other warfarin sodium products, including but not limited to statements regarding quality, bioequivalence, therapeutic equivalence, and/or content uniformity of Coumadin or other warfarin sodium products; or (2) allegedly anticompetitive agreements with wholesalers, pharmacy benefit managers, or TPPs, including (without limitation) alleged market retention agreements, unlawful rebates and/or discounts, and/or "commercial bribes," which claims demands or causes of action have been asserted or could have been asserted under the antitrust laws of the United States or of any state or other jurisdiction, or under any similar statutory or common law, whether sounding in antitrust, unfair or deceptive trade practice or unfair competition, false advertising, or consumer protection. However, excluded from Released Claims are (1) any and all claims for physical or bodily injury or defective products arising from any use or purchase of Coumadin; (2) any and all claims that Coumadin is not safe or effective; and (3) any and all claims sounding in contract arising out of an actionable breach of any of the terms and conditions of an agreement entered into by and between Defendant and any TPP, which claim does not arise out of or otherwise relate to Defendant's provision to any person or entity of allegedly false and/or misleading information relating to Coumadin or any other warfarin sodium product or any of the other allegations set forth in the Coumadin Litigation.

## SETTLEMENT HEARING

Pursuant to an order of the Court dated August 1, 2001, a hearing will be held on January 23, 2002 at 4:30 P.M. (or such adjourned dates as the Court may direct without further notice to the Class), in Courtroom 6B at the United States District Court, 844 N. King Street, Wilmington, Delaware 19801:

A. To determine whether the Proposed Settlement is fair, reasonable and adequate and in the best interests of the Class, whether it should be approved by the Court, and whether judgment should be entered thereon;

B. To determine whether the Class has been fairly and adequately represented by Plaintiffs and by attorneys for Plaintiffs and the Class;

C. To consider the applications of attorneys for Plaintiffs and the Class for an award of attorneys' fees and reimbursement of expenses; and

D. To consider such other matters as the Court may deem proper and necessary.

If you are a Class member, as defined above, and you have not timely requested exclusion from the Class, as set forth in this Notice, you may object to the fairness, reasonableness or adequacy of the Proposed Settlement, the fairness or adequacy of representation, or the applications for attorneys' fees and expenses.

Written Objections. Any Class member who has not timely submitted a written request for exclusion from the Class and wishes to object to the Proposed Settlement, the fairness or adequacy of representation, or the applications for attorneys' fees and expenses, must file with the Clerk of the Court, United States District Court, District of Delaware, 844 N. King Street, Wilmington, Delaware 19801, on or before December 17, 2001, a written statement of objection, along with any other supporting materials, papers or briefs that he or she wishes the Court to consider, and must on the same date serve such papers by mail to:

Bernard Persky, Esq.
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, New York, 10017                                                Adam Hoeflich, Esq.
       and                                          and                  Bartlit, Beck, Herman, Palenchar & Scott
Marvin A. Miller, Esq.                                                   Courthouse Place
Miller Faucher and Cafferty LLP                                         54 West Hubbard Street
30 North LaSalle Street                                                  Chicago, Illinois 60610
Suite 3200                                                               Counsel for DuPont Pharmaceuticals Company
Chicago, Illinois 60602
Co-Chair of Executive Committee
 of Counsel for Plaintiffs

Any objection that is not timely made shall be forever barred. Any attorney representing a Class member, at that Class member's expense, for the purpose of making objections must file with the Clerk of the Court, and serve a notice of appearance, no later than January 3, 2002 by mail to counsel listed above.

Appearance at Settlement Hearing. Any Class member who timely files and serves a written objection may also appear at the Settlement Hearing either in person or through personal counsel hired at the Class member's expense, to object to the fairness, reasonableness or adequacy of the Proposed Settlement, the fairness or adequacy of representation, or the applications for attorneys' fees and expenses. Class members or their attorneys intending to appear at the Settlement Hearing must deliver to Plaintiffs' Counsel and Counsel for DuPont, and file with the Court no later than January 3, 2002, a notice of intention to appear, setting forth: (i) the name, address and telephone number of the Class member and, if applicable, the name, address and telephone number of the Class member's attorney, (ii) the objection, including any papers in support thereof, and (iii) the name and address of any witnesses to be presented at the Settlement Hearing, together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony. Any Class member who does not timely file and serve a written objection and a notice of intention to appear by January 3, 2002, and any witness not identified in the notice of intention to appear, shall not be permitted to object or appear at the Settlement Hearing, except for good cause shown, and shall be deemed to have waived, forfeited, and shall be foreclosed from raising, any objection to the Proposed Settlement made at the Settlement Hearing, and shall be bound by all of the terms of the Stipulation and by all proceedings, orders and judgments by the Court.

## ATTORNEYS' FEES AND OTHER COSTS

At the Settlement Hearing, counsel for Plaintiffs and the Class will apply to the Court for an award of attorneys' fees of no more than 25% of the Settlement Fund and reimbursements of expenses. Plaintiffs' Counsel may make a supplemental application to the Court for attorneys' fees and expenses. All awards of attorneys' fees and expenses shall be paid exclusively out of the Settlement Fund.

## FURTHER INFORMATION

This Notice contains only a summary of the Proposed Settlement. The terms of the Proposed Settlement are set forth in detail in the Stipulation, which is available to the public to review at the office of the United States District Court for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801.

If you have questions concerning how to make a claim, you can call 1-800-734-4655 to listen to a prerecorded message summarizing the claims procedures or you may access information on the Internet at *www.coumadinsettlement.com.*

## PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE OR THE JUDGE.

DATED: August 1, 2001                    By Order of the Honorable Sue L. Robinson
                                         Judge of the United States District Court
                                         for the District of Delaware

## THIRD PARTY PAYOR CLAIM FORM INSTRUCTIONS

**IMPORTANT NOTICE**: IN ORDER FOR THE THIRD PARTY PAYOR CLASS MEMBER TO RECEIVE ITS SHARE OF THE NET SETTLEMENT FUND, PURSUANT TO THE ALLOCATION AND DISTRIBUTION PLAN DESCRIBED IN THE NOTICE, A COMPLETED, SIGNED, AND CERTIFIED PROOF OF CLAIM MUST BE RECEIVED BY THE SETTLEMENT ADMINISTRATOR, AT THE ADDRESS LISTED BELOW:

*Warfarin Sodium Antitrust Litigation*
*Complete Claim Solutions, Inc.*
*P.O. Box 24702*
*West Palm Beach, FL 33416*
*(800) 734-4655*

**IF YOUR COMPLETED, SIGNED CLAIM FORM IS NOT MAILED BY FIRST-CLASS MAIL, POSTAGE PREPAID, AND RECEIVED BY *APRIL 30, 2002*, YOU WILL NOT BE ALLOWED TO PARTICIPATE IN THE SETTLEMENT DISTRIBUTION.**

THE COMPLETED CLAIM FORM AND THE INFORMATION CONTAINED HEREIN WILL BE TREATED AS CONFIDENTIAL BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS SETTLEMENT.

Class Members are "Third Party Payors" which means any non-governmental entity that is (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons, and is also (ii) at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy, or plan.

This Proof of Claim may be completed, signed and certified by the Class Member itself, or by its duly authorized agent. IF A CLASS MEMBER SUBMITS A PROOF OF CLAIM ON ITS OWN BEHALF, NO OTHER PROOF OF CLAIM WILL BE PERMITTED ON BEHALF OF THAT CLASS MEMBER. IN THE EVENT THAT PROOFS OF CLAIM ARE FILED BY BOTH A CLASS MEMBER AND ANOTHER ENTITY THAT PURPORTS TO BE THE AUTHORIZED AGENT OF THAT CLASS MEMBER, ONLY THE CLASS MEMBER'S PROOF OF CLAIM WILL BE CONSIDERED BY THE SETTLEMENT ADMINISTRATOR. **THE SETTLEMENT ADMINISTRATOR IS AUTHORIZED TO REQUEST FROM PERSONS OR ENTITIES SUBMITTING PROOFS OF CLAIM, ANY DOCUMENTATION NECESSARY TO VERIFY ALL INFORMATION APPEARING IN THE PROOF OF CLAIM OR TO PREVENT CONSIDERATION OF DUPLICATE CLAIMS SUBMITTED BY OR ON BEHALF OF A CLASS MEMBER. FAILURE TO PROVIDE SUCH INFORMATION IN RESPONSE TO SUCH REQUEST MAY CONSTITUTE GROUNDS FOR REJECTION OF THE PROOF OF CLAIM.**

If one or more Class Member has authorized you to submit a Proof of Claim on its behalf, you must provide the information requested in Section C in addition to the other information requested by this Proof of Claim. You may submit a separate Proof of Claim for each Class Member that has duly authorized you to do so, OR you may submit one aggregate Proof of Claim for all such Class Members that have authorized you to do so. If you are submitting Proofs of Claim both on your own behalf as a Class Member AND on behalf of one or more Class Member that has authorized you to submit a Proof of Claim, you should submit one Proof of Claim for yourself and another Proof of Claim for the other Class Member(s). **Do not submit a Proof of Claim on behalf of any Class Member without specific prior authorization from that Class Member.**

If after reviewing this Proof of Claim you need additional assistance, you may contact the Settlement Administrator, at the toll-free number listed above.

## THIRD PARTY PAYOR PROOF OF CLAIM FORM

### SECTION A - Type of Claimant

Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. Only one space should be marked. **If you wish to make a claim as a Class Member AND ALSO as the authorized agent of other Class Members, please complete one Proof of Claim for your claim as a Class Member and another Proof of Claim for those Class Members for whom you are authorized to submit a claim.**

This Proof of Claim is being filed by: (select one)

A.    (____)    The Class Member, itself.

**OR**

B.    The duly authorized agent of the Class Member(s) identified in Section C of this Proof of Claim, which agent's relationship with the Class Member(s) is best described, as follows:

       (____)    Third Party Administrator (other than a Pharmacy Benefits Manager)
       (____)    Pharmacy Benefits Manager
       (____)    Other. Explain: _____

       If you marked "A," complete Sections B, D and E of this Proof of Claim, but skip Section C.
       If you marked "B," complete Sections C, D and E of this Proof of Claim, but skip Section B.

### SECTION B - Claim By Class Member

You should complete this Section B if you are making a claim on your own behalf as a Class Member. If you are making a claim as the authorized agent of one or more Class Members, you should skip this section and proceed to Section C.

_____
Class Member's Name

_____
Street Address                                                                                          Floor/Suite

_____
City                                                         State                                        Zip Code

(_____)_____        (_____)_____
Area Code - Telephone Number                              Area Code - Fax Number

_____
Federal Employer Identification Number

Any other names by which you have been known or other FEINs you have used to pay prescription drug benefits since March 1, 1997:

_____        _____

Check the term below that best describes your company/entity:

       (____)    Health Insurance Company/HMO            (____)    Self-Insured Employer Health Benefit Plan
       (____)    Self-Insured Union Health & Welfare Fund    (____)    Other. Describe: _____

### SECTION C - Claim by Authorized Agent of Class Member(s)

You should complete this Section C if you are submitting this Proof of Claim as the duly authorized agent of one or more Class Members.

_____
Authorized Agent's Name

_____
Street Address                                                                                          Floor/Suite

_____
City                                                         State                                        Zip Code

(_____)_____        (_____)_____
Area Code - Telephone Number                              Area Code - Fax Number

_____
Authorized Agent's Federal Employer Identification Number

(Continued on next page)

**SECTION C – (continued)**

Please list the Federal Employer Identification Number and/or name of every Class Member for whom you have been duly authorized to submit this Proof of Claim (attach additional sheets to this Proof of Claim as necessary). (In the alternative, you may submit the requested list of Class Member names and/or FEINs in an acceptable electronic format. Please contact the Settlement Administrator to determine what formats are acceptable.):

| | | |
|---|---|---|
| \_\_\_\_ - _____ | \_\_\_\_ - _____ | \_\_\_\_ - _____ |
| \_\_\_\_ - _____ | \_\_\_\_ - _____ | \_\_\_\_ - _____ |

**SECTION D - Information Necessary to Calculate Class Member(s)' Claim**

*Amounts paid or reimbursed for prescriptions of Coumadin filled during the period*
*March 1, 1997 - August 1, 2001, throughout the United States:*          $_____* 

\* "Amounts paid or reimbursed for prescriptions of Coumadin" is the amount paid <u>minus</u> any discounts, rebates, samples and reimbursements received from or on behalf of DuPont Pharmaceuticals Company.

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the Claimant.*

**SECTION E - Jurisdiction of the Court and Certification**

By signing below, I hereby swear or affirm, on my own behalf and/or on behalf of the "Authorized Agent," that: (1) I have been given authority to submit this Proof of Claim either (a) by the Class Member on its behalf; or (b) if this Proof of Claim is submitted by an "Authorized Agent," by the Authorized Agent on its behalf, and such Authorized Agent, in turn, has been given the authority to submit this Proof of Claim by each Class Member identified in this Proof of Claim and in any attachments to this Proof of Claim, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the Net Settlement Fund to such Class Member; (2) the information contained in this Proof of Claim and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and each Class Member on whose behalf this Proof of Claim is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Delaware (the "Court") for all purposes associated with this Proof of Claim, including resolution of disputes relating to this Proof of Claim; (4) in the event that amounts from the Net Settlement Fund are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, counsel for the Class, and the Settlement Administrator harmless with respect to any claims made by said Class Member. I acknowledge that any false information or representations contained herein may subject the Authorized Agent and me to sanctions, including the possibility of criminal prosecution. I hereby agree, on behalf of myself and the Authorized Agent, to supplement this Proof of Claim by furnishing documentary backup for the information provided herein, upon request of the Settlement Administrator.

Name: _____

Position: _____

             [Print or type]
Date: _____

The following information is to be provided by the Individual that signs and certifies this Proof of Claim:
I am filing this Proof of Claim as the authorized employee of the following Class Member or Authorized Agent for Class Member:

1. Name of Individual's Employer: _____

2. Business Address: _____

_____

| City | State | Zip Code |
|---|---|---|

3. ( _____ ) _____       ( \_\_\_\_\_ ) _____
     Area Code - Telephone Number                    Area Code - Fax Number

4. _____
     E-mail Address

# CONSUMER CLAIM FORM

**IMPORTANT NOTICE**: Please fill out this form (type or print all information except signature) and return it to:

*Warfarin Sodium Antitrust Litigation*
*c/o Complete Claim Solutions, Inc.*
*P.O. Box 24702*
*West Palm Beach, FL 33416*
*(800) 734-4655*

**IF YOUR COMPLETED, SIGNED CLAIM FORM IS NOT MAILED BY FIRST-CLASS MAIL, POSTAGE PREPAID, AND RECEIVED BY _April 30, 2002_, YOU WILL NOT BE ALLOWED TO PARTICIPATE IN THE SETTLEMENT DISTRIBUTION.**

1.  Name: _____
       (Use name in which prescriptions were written)

2.  Current Address:
    Street: _____

    City: _____  State: _____  Zip Code: _____

    Phone Number: _____

3.  You **must include proof** of your most recent purchase of Coumadin during March 1, 1997 through August 1, 2001.

4.  When did you begin using Coumadin: _____
                                              (Year)

5.  How much have you paid for your purchases of Coumadin during the period March 1, 1997 through August 1, 2001? (deduct any reimbursements you received from prescription drug benefit plans or other insurance): $_____

BY SUBMISSION OF THIS PROOF OF CLAIM, I HEREBY CERTIFY THAT I HAVE PURCHASED COUMADIN DURING THE PERIOD MARCH 1, 1997 TO AUGUST 1, 2001 AND DECLARE UNDER PENALTY OF PERJURY THAT ALL OF THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

_____     _____
          SIGNATURE                            DATE

# Exhibit I

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re WARFARIN SODIUM ANTITRUST LITIGATION, | : : : : MDL 98-1232 (SLR) |
| This document relates to: All Actions. | : : |

**AFFIDAVIT OF DAWN E. ADDAZIO REGARDING**
**THE STATUS OF THE SETTLEMENT FUND AND**
**IN SUPPORT OF COMPLETE CLAIM SOLUTIONS, INC.'S**
**SUPPLEMENTAL APPLICATION FOR SETTLEMENT ADMINISTRATION COSTS**

STATE OF FLORIDA         )
                         ) ss.:
COUNTY OF PALM BEACH  )

DAWN E. ADDAZIO, being duly sworn, deposes and says:

1.      I am the President of Complete Claim Solutions, Inc. ("CCS"), the settlement administrator in the above-captioned litigation (the "Action"). I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I submit this affidavit to provide the Court with a report on the status of the Settlement Fund and in support of CCS's supplemental application for settlement administration costs. With respect to the supplemental application, as described below and as supported by the attached exhibits, CCS hereby requests $280,302.65 for costs and fees incurred since June 1, 2002.

3.      CCS is approximately 90 days away from completing claims processing activities and issuing checks to all approved claimants, but in order to do the necessary calculations we will need

to know the amount remaining in the Settlement Fund after the payment of any additional fees and expenses the Court may award to Plaintiffs' counsel and to CCS. CCS will report further to the Court regarding the final disposition of claims in this administration when Plaintiffs' counsel submits a proposed distribution order in connection with the final distribution of the Net Settlement Fund. CCS will be making no further applications for costs or fees.

## THE STATUS OF THE SETTLEMENT FUND

4.      The Settlement Fund is valued through June 30, 2005 at $33,059,832.51, after deduction of attorneys' fees and expenses and administration costs already approved by this Court. This amount includes $1,747,428.35 of interest earned by the Settlement Fund since inception. CCS has filed with the IRS all relevant tax returns (including Forms 1120-SF) as a Qualified Settlement Fund ("QSF") as required under Treasury Regulations 1.468. In order to determine if any taxes are due for 2005, CCS would need to determine if further administration costs (which are deductible against interest earned by the Settlement Fund and which are the subject of this affidavit) are incurred against the QSF and approved by this Court, as indicated in ¶3, above.

## RELEVANT BACKGROUND AND
## SUMMARY OF SUPPLEMENTAL APPLICATION

5.      In connection with the settlement of the Action (the "Settlement"), Plaintiffs' counsel retained CCS to: (i) provide notice to the potential members of the Settlement class (the "Class"); (ii) process the claims of Class members; (iii) calculate Recognized Losses (as defined by the Settlement), and; (iv) distribute the Net Settlement Fund (as defined by the Settlement) to Class members with valid claims. I have previously reported to the Court with respect to CCS's activities concerning the administration of the Settlement on two occasions. *See* Affidavit of Dawn E. Addazio Regarding Mailing and Publication of Notice, sworn to on January 7, 2002; Affidavit of

2

Dawn E. Addazio Regarding the Status of Settlement Administration Activities and Response to Questions from the Court, sworn to on June 6, 2002 ("my June 2002 Affidavit"). A copy of my June 2002 Affidavit is annexed hereto as Exhibit 1.

      6.      In its August 30, 2002, Opinion and Order approving the Settlement, the Court found that the administration costs incurred by CCS through May 31, 2002 were "fair and reasonable." *See In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 263 (D. Del. 2002) (the "Settlement Approval Order"), *aff'd*, 391 F.3d 516 (3d Cir. 2004). The Court further approved an additional $137,875.00 in anticipated costs to complete administration of the Settlement, stating that "[i]f the additional costs exceed $137,875 by more than 10%, the administrator shall submit an explanation for the additional requirements to the court for approval." *Id.*

      7.      Pursuant to the Court's direction in the Settlement Approval Order, this affidavit constitutes CCS's "explanation for the additional requirements" to make CCS whole in connection with the costs it has incurred in administering the Settlement since May 31, 2002.

      8.      There are two cost drivers that warrant this application. The first and most obvious cost driver is simply the fact that the administration process has taken much longer than we originally anticipated. Because of the numerous appeals that held the Settlement in limbo, the Settlement Approval Order was not affirmed by the Third Circuit until December of 2004 and did not become final until the time to petition for a writ of *certiorari* expired in March of 2005. CCS's cost estimates contemplated that its involvement after approval of the Settlement would be measured in months, not years. But CCS has now been acting as claims administrator for almost three years since the Settlement Approval Order issued. During that time, CCS has incurred greater administrative, transactional, maintenance and vendor costs than originally projected. CCS seeks reimbursement for these costs.

9.      The second cost driver relates to the information I provided to the Court in my June 2002 Affidavit, which the Court then relied on in issuing the Settlement Approval Order. My June 2002 Affidavit was in response to the Court's Order dated May 23, 2002 (the "May 2002 Order"), a copy of which is annexed hereto as Exhibit 2.    In the May 2002 Order, the Court requested "a detailed estimate of *future* settlement administration costs as well as a summary of those costs *incurred to date*" (emphasis added). I understood the Court to have requested two discrete pieces of information: (1) an estimate of the costs required for settlement administration tasks that *were to begin* in the future, after the ongoing settlement administration tasks had been completed (*e.g.*, mailing out deficiency letters and issuing settlement checks to Class members with valid claims), and; (2) a snapshot of the costs CCS had already incurred with respect to its ongoing settlement administration tasks, such as the processing of claims and responding to inquiries of potential claimants. The two figures I provided to the Court with my June 2002 Affidavit, $2.058 million for costs incurred and $137,875 for "future" administration activities, did not include a component of CCS's total administration costs, *i.e.*, the costs to complete the ongoing tasks for which the Court had requested the "costs incurred to date" snapshot. CCS seeks reimbursement for these costs.

10.     In retrospect, it appears that what the Court sought by its May 2002 Order with respect to "future" costs was information not only with respect to tasks that were *to begin* in the future, but the aggregate costs for all work to be performed post-May 31, 2002. I regret any confusion caused by not including the anticipated additional costs of the then-ongoing activities in my June 2002 Affidavit. But as discussed below, CCS, in fact, has incurred these costs and the associated activities were necessary for the administration of the Settlement. Indeed, aside from the unanticipated appeal-related costs for which CCS also seeks reimbursement, CCS's aggregate costs

4

for administering the Settlement are actually below the original proposal to Plaintiffs' counsel. In other words, were it not for the appeal-related costs, CCS would have come in under budget.

## THE UNANTICIPATED COSTS CCS
## HAS INCURRED BECAUSE OF THE APPEALS

11.     Through June of this year, CCS has incurred $214,416.08 in unanticipated costs (fees and out-of-pocket expenses) resulting from the duration of time between the Settlement Approval Order and the date the Third Circuit's affirmance became final in March 2005. Included in this amount are costs for such items as maintaining a P.O. Box, maintaining a toll-free number for claimants to call with questions, answering additional telephone calls, processing additional, unanticipated correspondence (such as change-of-address forms and status requests from Class members), responding to emails, keeping the Coumadin Settlement website (www.coumadinsettlement.com) up and running, revising the website and telephone FAQs as necessary, warehousing documents, filing additional tax returns with respect to the Settlement and various administrative tasks. In addition, because the appeals threatened the very existence of the Settlement, CCS was instructed to and did stop all activities relating to the processing of claims while the appeals were pending. There were costs associated both with winding down operations when the stop-work instruction came in, and with ramping up operations when the affirmance of the Settlement Approval Order became final.

12.     The single most significant cost component in this category relates to telephone charges. Even though claims processing operations ceased, CCS continued call-center operations. Indeed, the pendency of the appeals made the continuation of this service all the more necessary, as many claimants, particularly those who were elderly, naturally had questions concerning the status of the Settlement during the years it was on hold. CCS originally anticipated responding to a total of 10,000 claimant telephone inquiries. To date, CCS has responded to nearly 50,000 calls. At a cost

of $1 per minute, and with the average call lasting approximately 3½ minutes, CCS has incurred total costs of over $170,000, well in excess of what we anticipated back in the 2001-2002 timeframe. We estimate that approximately $135,871.93 of those costs are attributable to the fact that the administration of the Settlement was delayed by the appeals.

13.    Annexed hereto as Exhibit 3 is a summary of CCS's appeal-related costs. As such, CCS hereby requests that the Court authorize the payment of $214,416.08 from the Settlement Fund with respect to this category of incurred costs.

### CCS'S COSTS FOR ADMINISTRATION ACTIVITIES THAT WERE UNDERWAY BUT NOT COMPLETED AS OF MAY 31, 2005

14.    To comply with the May 2002 Order with respect to the Court's data requests concerning "future" costs and costs incurred "to date," I annexed a number of documents to my June 2002 Affidavit. As to "future" costs, I attached an "Estimate to Complete Administration Tasks" (Exhibit C to my June 2002 Affidavit and reproduced as part of Exhibit 1 hereto). As to costs incurred "to date" I attached an invoice that captured CCS's fees and expenses from the inception of the engagement through May 31, 2002 (the "June 2002 Invoice"; Exhibit B to my June 2002 Affidavit and reproduced as part of Exhibit 1 hereto but without the attachments that were included in June 2002).

15.    A cost component not reflected in either of those documents, but which has, in fact, been incurred by CCS, relates to the activities that were already underway as of May 31, 2002, but which were not yet completed. This category of costs includes the processing of claims that occurred after the "snapshot" of costs incurred as of May 31, 2002, fielding anticipated telephone calls (*i.e.*, those that occurred after May 31, 2002, but before the unanticipated additional appeal-related telephone costs began to be incurred), reviewing and identifying deficient and ineligible claims, etc.

6

16.    The single most significant cost component in this category relates to claims processing costs, specifically the process by which CCS processed and analyzed claims with respect to potential third-party payor ("TPP") Class members. CCS received claim forms directly (*i.e.*, from potential TPP Class members themselves), and indirectly (*i.e.*, on behalf of TPPs by various record-keeping entities such as third-party administrators ("TPAs"), pharmacy benefit managers ("PBMs") or other duly authorized agents). In connection with these claims, CCS conducted extensive reviews to eliminate or reduce, as applicable, deficient claims and claims containing overlapping or duplicative requests (*e.g.*, where a TPP submitted a claim but the TPP's PBM also submitted a claim on behalf of numerous entities, including that TPP). To date, CCS has identified more than $18 million in over-claimed "drug spend" amounts by these TPAs and PBMs. Much of this work occurred after May 31, 2002 and was necessary to identify and weed out deficient and duplicative claims.

17.    CCS had originally budgeted for as many as 200,000 claims to be filed by consumers and TPPs, at a total anticipated fee of $309,000. The actual number of claims ultimately received and processed was less than anticipated, while the actual per-claim processing costs were slightly higher than anticipated. CCS has processed just under 97,000 total claim records, at an aggregate fee of $162,480.40. *See* Exhibit 4 hereto, CCS's invoice to Plaintiffs' counsel dated May 24, 2005. As reflected in the June 2002 Invoice, however, only $67,321.75 of the total anticipated claims processing fees had been billed to that point in time. *See* Exhibit 1. Thus, as reflected in the chart below, with respect to that cost component there is a difference, *i.e.*, an outstanding balance, of $95,158.25:

| Claims Processing Fees | Amount |
|---|---|
| Aggregate fees incurred (per Exhibit 4 hereto) | $64,346.40<br>+ 98,134.00<br>$162,480.40 |
| Fees previously invoiced (per Exhibit 1 hereto)<br>and approved per the Settlement Approval Order | $65,211.75<br>+ 2,110.00<br>$67,321.75 |
| **Net Outstanding Claims Processing Fees** | $162,480.40<br>- 67,321.75<br>$95,158.25 |

18.    However, after all related credits and debits concerning CCS's fees in administering the Settlement are factored in, CCS's aggregate request with respect to the non-settlement related fees category is $75,065.45. There are, in addition, $54,608.33 in outstanding expenses, bringing CCS's aggregate non-appeal related fee and expense total since May 31, 2002 to $129,673.78. Exhibit 5 is a summary of CCS's costs (fees and out-of-pocket expenses) for administration activities that were (a) underway but not completed as of May 31, 2005, and (b) not listed in either the June 2002 Invoice or the Estimate to Complete Administration Tasks included with my June 2002 Affidavit (*see* Exhibit 1).    Exhibit 5 also nets out any applicable credits that offset CCS's incurred costs.  As discussed below, CCS's aggregate fees and costs must be further offset by amounts previously awarded by the Court.

## RECONCILIATION

19.    CCS originally estimated and informed Plaintiffs' counsel that the total administration costs for the Settlement would be approximately $2.4 million. *See* Exhibit 6. Putting aside for a moment the $214,416.08 attributable to the unanticipated appeal-related costs, CCS came in under budget.  Certain costs, such as those for claims processing, were less than originally

8

budgeted for while others, such as publication-related costs, were greater (compare Exhibit 6 with Exhibit 4), but the overall net result is that, absent the unanticipated appeal-related costs, the total administration cost for the Settlement will be $2,275,843.38, which includes all costs incurred and still anticipated through the conclusion of this administration. When the unanticipated appeal-related costs are added in, the aggregate cost for administration of the Settlement is $2,490,259.46.

20.     The amounts previously approved by the Court in the Settlement Approval Order are as follows:

| For costs incurred: | $2,058,294.60 |
|---|---|
| For anticipated costs: | 137,875.00 |
| Permitted 10% buffer: | 13,787.50 |
| **Total Administration Costs Approved:** | **$2,209,957.10** |

21.     Subtracting the total of previously approved costs, *i.e.*, $2,209,957.10, from the total administration costs, *i.e.*, $2,490,259.46, yields a balance of $280,302.36, consisting of $214,416.08 in unanticipated appeal-related costs, $75,065.45 in uncompensated claims processing fees and $54,608.33 in out-of-pocket expenses, less the $137,875.00 and approved 10% overage ($13,787.00) in estimated costs already approved by this Court.

22.     As such, on behalf of CCS I hereby request the Court to authorize an additional payment from the Settlement Fund to CCS in the amount of $280,302.65. CCS's most recent invoice to Plaintiffs' counsel, (as reflected in Exhibit 4) covers the period from June 1, 2002 through the conclusion of the administration of the Settlement. The total amount requested is $2,490,259.46 for fees and expenses incurred and to be incurred, less the previously approved amount of $2,209,957.10, leaving a balance due of $280,302.36. CCS respectfully requests that the Court

approve the payment of these fees and expenses out of the Settlement Fund.

_____
Dawn E. Addazio

Sworn to before me on
this 29th day of July, 2005

_____
Notary Public

ERIC P. LACHANCE
COMMISSION # DD073904
EXPIRES NOV 25 2005
BONDED THROUGH
RLI INSURANCE COMPANY

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| In re WARFARIN SODIUM ANTITRUST LITIGATION | MDL 98-1232 (SLR) |
|---|---|
| This document relates to: All Actions. | |

## AFFIDAVIT OF DAWN E. ADDAZIO REGARDING
## THE STATUS OF SETTLEMENT ADMINISTRATION ACTIVITIES AND
## RESPONSE TO QUESTIONS FROM THE COURT

STATE OF FLORIDA           )
                           ) ss.:
COUNTY OF PALM BEACH )



DAWN E. ADDAZIO, being duly sworn, deposes and says:

1.      I submit this affidavit in order to provide the Court and the parties to the above-captioned

litigation with regards to certain questions asked by this Court in its Order of May 23, 2002.  I

am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts

set forth herein and, if called as a witness, could and would testify competently thereto.


2.      I am the President of Complete Claim Solutions, Inc. ("CCS").  CCS was retained as the

Settlement Administrator by plaintiffs' counsel to provide notice to the potential members of the

Settlement Class ("Class Member"), as referred to in the Affidavit of Dawn E. Addazio filed

with this Court in January 2002 (the "Dissemination Affidavit").  In addition to the

administration duties outlined in the Dissemination Affidavit, CCS was specifically retained to

process Consumer and Third-Party Payor Claim Forms ("Claims") in the Settlement, calculate

Recognized Losses, and, if the settlement is approved, to ultimately distribute the Net Settlement

Funds to authorized Consumer and Third-Party Payor Class Members.  A copy of the printed

Claim Form for Consumer Class Members is attached hereto as Exhibit A.

## ADMINSTRATION ACTIVITIES AND STATISTICS ON CONSUMER CLAIMS:

3.     CCS has acted as a repository for Class Member inquiries and communications received in this action. In this regard, CCS has received requests for Claim Forms via mail, telephone and email from Consumer and Third-Party Payor Class Members. In the aggregate, through June 3, 2002, Claim Forms have been mailed to 90,926 potential members of the Consumer Class.

4.     The last date for the submission of Claims was April 30, 2002. Data from Consumer Class Members concerning (a) the date when the claimant began using Coumadin, and (b) how much was paid for purchases of Coumadin during the period July 1, 1997 through August 1, 2001 (after deducting any reimbursements received from prescription drug benefit plans or other insurance), was entered into a segregated CCS database. CCS has completed the processing of all Claims received to date.

5.     Through June 3, 2002, CCS has received and processed 48,305 Consumer Claims, with a total amount claimed[1] of $29,032,204.

## CURRENT ADMINISTRATION COSTS

6.     The Court, in its Order of May 23, 2002, requested a detailed estimate of future settlement administration costs. To this extent, CCS has submitted an invoice of the total administration costs incurred to date which includes $215,484.75 in fees and $1,842,809.85 in expenses (which included publication costs of $1,531,106.00.) Attached hereto as Exhibit B is a summary of administration costs incurred to date.

---

[1] The "total amount claimed" is the net out-of-pocket payments made for Coumadin. The "Recognized Loss" is 15% of that amount.

7.    In addition, CCS estimates that an additional $50,000 in fees and $87,875 in expenses will be incurred by CCS to complete the administration tasks. Attached hereto as Exhibit C is a summary of these estimated costs which does not include identifying or excluding fixed co-pay claimants, as outlined in ¶8, below.

## IDENTIFYING AND EXCLUDING FIXED CO-PAY CONSUMERS

8.    The Court, in its Order of May 23, 2002, requested a comparison of costs of current administration tasks with the costs in identifying and excluding fixed co-pay Consumers. Since the Claim Form did not request a Class Member to identify which type of insurance policy or health plan (or, in some cases, multiple plans) that a claimant had during the Class Period (July 1, 1997 through August 1, 2001), CCS is unable to determine from the Claim data, as referred to in ¶4, above, which claimants had variable or fixed co-payments. Therefore, CCS would need to undertake the following processes in order to identify and ultimately exclude claimants with fixed co-pay policies:

(a)   Send a letter to each Consumer Claimant who filed a claim to:

i.    identify whether a claimant had variable or fixed co-payments;

ii.   determine if the consumer's co-payment changed during the Class period;

iii.  determine the time periods during which the consumer had a variable co-pay;

iv.   determine the time periods during which the consumer had a fixed co-pay; and

v.    determine the amount paid pursuant to the fixed co-pay and the variable co-pay during the Class period (presumably, a claimant who paid any amount for Coumadin pursuant to variable co-pay during the Class period would not be excluded from the distribution);

(b)   Require each claimant to identify each and every type of policy he or she had during the Class period;

(c)   Respond to written and email inquiries;

(d)   Process "undeliverable mail"; resend letters to new addresses;

(e)   Respond to telephone inquiries concerning questions from this mailing, and "walk" elderly Consumer Claimants through the response process;

(f)   Prepare and update telephone scripts, recorded messages and website;

(g)   Process responses from Consumer Claimants by entering newly provided data into the CCS database;

(h)   Modify the calculation program to include only those claims noted as having variable co-pays for at least a portion of the Class period;

(i)   Send Final Rejection Notices to claimants who are identified (in whole) as having fixed co-pays;

(j)   Send Final Partial Rejection Notices to claimants who are identified, in part, as having fixed co-pays, only to the extent of that fixed co-pay amount;

(k)   Settle discrepant or inconsistent conditions/amounts within newly provided information;

(l)   Assume non-responsive claimants had fixed co-pays, thereby rejecting non-responsive claimants;

(m)   Send Final Rejection Notices, if required;

(n)   In addition, as advised by Counsel, send letters to those identified as fixed co-payers regarding their rights to now opt-out of the Settlement; and process responses.

9.     The administration costs associated with conducting task (a) through (n), above, is $2 per letter sent, which includes the additional set-up, processing, and programming involved. It does not, however, include out-of-pocket expenses for printing, stuffing and mailing the letters. We estimate these costs at an additional 50¢ per letter, which includes postage. Therefore, we estimate that identifying and excluding fixed co-pay claimants will add approximately $145,000 (or 67%) to the administration costs already outlined in ¶¶6 and 7, above.


10.    In addition, the steps outlined in ¶8 (a) through (n), above, would add 60 – 90 days to the current timetable. Extending the administration through the end of the year, which may further increase administration costs, e.g., the call center activities (incurring additional monthly maintenance charges, increased status requests, etc.), additional quality assurance reviews and vendor interaction.

_Dawn E. Addazio_
Dawn E. Addazio

Sworn to before me on
this _6th_ day of _June_, 2002



Notary Public

JACQUELINE APPEL
MY COMMISSION # CC 939511
EXPIRES: September 24, 2004
Bonded Thru Notary Public Underwriters



**COMPLETE CLAIM SOLUTIONS, INC.**
319 Clematis Street, Suite 521 • West Palm Beach, FL 33401
TEL: (800) 720-5216 • (561) 651-7777 • FAX: (561) 651-7788

Exhibit B

INVOICE NO. **WAR 001**

June 3, 2002

Jennifer Sprengel, Esq.
Miller Faucher
26 Ridgefield
Willowbrook, IL 60521

Bernard Persky, Esq.
Goodkind, Labaton, Rudoff & Sucharow, LLP
100 Park Avenue
New York, NY 10017

**Re: Warfarin Sodium Antitrust Litigation**
**from Inception through May 31, 2002**

*Fees:*

| | | |
|---|---:|---:|
| Set-up and database preparation, coordination of printing, notice program, mailing and telephones | $25,000.00 | |
| Satisfying Requests for Proof of Claim and Notice Packets | 51,000.00 | |
| Claims Processing (48,305 Consumer claims @ $1.35 per claim) | 65,211.75 | |
| Claims Processing (1,055 TPP claims @ $2.00 per claim) | 2,110.00 | |
| Tele Calls referred to CCS: 7,861 calls (av 6 min p/call @ $1.00 p/min) | 47,163.00 | |
| Quality Assurance/Testing | 25,000.00 | |
| | | $215,484.75 |

*Expenses:*

| | | |
|---|---:|---:|
| Call Center (Attachment A) | $246,676.35 | |
| Federal Express Charges (Attachment B) | 561.00 | |
| Postage Log (Attachment C) | 27,800.07 | |
| Photocopying/Faxing @ $ .20 per page (Attachment D) | 1,647.20 | |
| Printing Charges (Attachment E) | 30,412.76 | |
| Publications Log (Attachment F) | 1,531,106.00 | |
| Website Charges (Attachment G) | 3,524.55 | |
| Storage | 331.92 | |
| PO Box | 750.00 | |
| | | $1,842,809.85 |

**Total:**          **$2,058,294.60**

**Exhibit B**

**COMPLETE CLAIM SOLUTIONS, INC.**
319 Clematis Street, Suite 521 • West Palm Beach, FL 33401
TEL: (800) 720-5216 • (561) 651-7777 • FAX: (561) 651-7788

Exhibit C

### Estimate To Complete Administration Tasks

*Fees:*

| | |
|---|---:|
| Sending Deficiency Letters/Ineligibility Notices | 25,000.00 |
| Check Disbursement | 5,000.00 |
| Tax Returns and Bank Reconciliation | 5,000.00 |
| CCS Telephone (referred calls) | 15,000.00 |
| | **$50,000.00** |

*Expenses:*

| | |
|---|---:|
| Printing/Envelopes/Stuffing/Mailing | 10,000.00 |
| Postage (checks, letters) | 30,000.00 |
| PO Box (6 months) | 375.00 |
| Website | 1,500.00 |
| Storage | 500.00 |
| Call Center/Live Charges | 45,000.00 |
| Checks/Bank fees | 500.00 |
| | **$87,875.00** |

**Total Estimated Costs:**                       **$137,875.00**

**Exhibit C**

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re WARFARIN SODIUM          )
ANTITRUST LITIGATION           )
                               )
                               )    MDL No. 98-1232-SLR
This document relates to:      )
All Actions.                   )

### O R D E R

At Wilmington this $23d$ day of May, 2002, to assist the court with its decision on the motion for final approval of the proposed stipulation of settlement and compromise (D.I. 233);

IT IS ORDERED that, on or before June 10, 2002, the parties shall jointly submit the following supplemental documentation and analysis to the court:

1.   The court is reluctant to approve a settlement that includes distributions to fixed co-pay consumers, i.e., those consumers whose co-pay is the same for generic and name-brand drugs. Accordingly, the parties shall explain the effect that excluding the fixed co-pay consumers would have on the viability of the settlement agreement. In addition, the parties shall provide an estimate of the costs that would be generated by identifying and excluding the fixed co-pay consumers from the settlement distribution, and compare that to the estimated costs generated by processing distributions to the fixed co-pay consumers if they are not excluded.

5/24/02

2.    The parties shall provide a detailed estimate of future settlement administration costs as well as a summary of those costs incurred to date.

3.    The parties shall provide additional explanation of the assumptions[1] underlying Gary L. French's expert report and damage estimates (D.I. 238) and identify and describe the documents or testimony in the record that support the validity of these assumptions.

4.    The parties shall provide a written explanation for the basis of the 15% recognized loss calculation to supplement the explanation provided at the fairness hearing (D.I. 267 at 51-52).


United States District Judge

---

[1]The number of Coumadin users, defendant's market share over time, average price difference between generic warfarin sodium and Coumadin, 2.5% overpricing for Coumadin, and the average cost per month per user for Coumadin.

2

# EXHIBIT 3

*In re: Warfarin Sodium Antitrust Litigation*

## *APPEAL-RELATED COSTS*

*Appeal Costs (July 2002 - May 2005)*

| | |
|---|---:|
| Professional Fees (668 hours)[1] | $70,678.75 |
| Responding to Plaintiff Inquiries (31,811 calls x 3.5 min @ $1 p/min) | 111,338.50 |
| Call Center (IVR/overflow to call center) | 24,533.43 |
| Postage (corresponding with Class members, FedEx, etc.) | 334.73 |
| P.O. Box (2.5 years) | 2,060.00 |
| Tax Returns and quarterly estimates (3 years @ 1,500 p/yr) | 4,500.00 |
| Website maintenance (3 years) | 970.67 |
| | **$214,416.08** |

[1]Professional Fees include opening/responding to mail; change of addresses; emails to and from Class members; FAQ updates; financial (vendor payments, etc.); maintaining statistics; audits/reviews; warehousing documents; training; surpervisory; affidavits; meetings; calls with Counsel; reports; IT (call center loads, letters)

# EXHIBIT 4

# Complete Claim Solutions, Inc.
### Class Action, Antitrust and Consumer Claims Administration

**C G S**

319 Clematis St., Suite 300, West Palm Beach, FL 33401
561.651.7777 • Fax: 561.651.7788
535 Broadhollow Road, Suite B1, Melville, NY 11747
631.439.0065 • Fax: 631.439.0072

Tax I.D. No.: 65-0866339

www.CompleteClaimSolutions.com

May 24, 2005

Invoice No. **WAR 002**

Jennifer Sprengel, Esq.
Miller Faucher
26 Ridgefield
Willowbrook, IL 60521

Bernard Persky, Esq.
Goodkind, Labaton, Rudoff & Sucharow LLP
100 Park Avenue
New York, NY 10017

### Re: Warfarin Sodium Antitrust Litigation From Inception through May 14, 2005

*Professional Fees Per Proposal (cumulative):*

| | | |
|---|---:|---:|
| Coordination of Printing, Notice Program, (Mailing and Telephones) Set-up and Database Preparation | $25,000.00 | |
| Responding to Claimant Inquiries (Telephone)  (17,143 x 3.5 min) ($1 p/min) | 60,000.50 | |
| Satisfying Requests for Proof of Claim and Notice Packets (106,290 @17¢ packet) | 18,069.30 | |
| Processing Consumer and TPP Non-Deficient Claims (47,664 @ $1.35) | 64,346.40 | |
| Processing Consumer and TPP Deficient Claims  (49,067 @ $2.00) | 98,134.00 | |
| Quality Assurance/Testing | 25,000.00 | |
| | | $290,550.20 |
| *Less previously approved Professional Fees:* | | -215,484.75 |
| | | 75,065.45 |

*Expenses Incurred June 1, 2002 - May 14, 2005:*

| | | |
|---|---:|---:|
| Call Center (Attachment B) | $32,968.90 | |
| Federal Express/Postage Charges (Attachment C) | 1,466.72 | |
| Printing Charges (Attachment D ) | 14,451.78 | |
| Website Charges (Attachment E) | 197.13 | |
| Photocopying/Faxing @ $ .20 per page (Attachment F) | 784.60 | |
| Tax Preparation (2001 - 2004) | 1,500.00 | |
| Bank fees and Checks (First Union) | 1,423.95 | |
| Storage | 1,440.25 | |
| PO Box Rental ( 8/1/02 - 7/31/05) | 375.00 | |
| *Total Expenses Incurred* | | 54,608.33 |

*Appeal Costs (July 2002 - May 2005)*

| | | |
|---|---:|---:|
| Professional Fees (668 hours)[1] | $70,678.75 | |
| Responding to Plaintiff Inquiries (31,811 calls x 3.5 min @ $1 p/min) | 111,338.50 | |
| Call Center (IVR/overflow to call center) | 24,533.43 | |
| Postage (corresponding with Class members, FedEx, etc.) | 334.73 | |
| P.O. Box (2.5 years) | 2,060.00 | |
| Tax Returns and quarterly estimates (3 years @ 1,500 p/yr) | 4,500.00 | |
| Website maintenance (3 years) | 970.67 | |
| | | 214,416.08 |

*Estimate To Complete Administration Tasks (to conclusion)*

| | | |
|---|---:|---:|
| Printing/Envelopes/Stuffing/Mailing | $10,000.00 | |
| Postage (checks, letters) | 30,000.00 | |
| PO Box (6 months) | 375.00 | |
| Website | 1,500.00 | |
| Storage | 500.00 | |
| Call Center/Live Charges | 45,000.00 | |
| Checks/Bank fees | 500.00 | |
| | | 87,875.00 |
| *Less Estimate to Complete Approved by Court (plus 10% approved overage):* | | -151,662.50 |
| | | $280,302.36 |

---

[1]Professional Fees include opening/responding to mail; change of addresses; emails to and from Class members; FAQ updates; financial (vendor payments, etc.); maintaining statistics; audits/reviews; warehousing documents; training; surpervisory; affidavits; meetings; calls with Counsel; reports; IT (call center loads, letters)

# EXHIBIT 5

## *In re: Warfarin Sodium Antitrust Litigation*

# *SUMMARY OF COSTS FOR ADMINISTRATION*

*Professional Fees Per Proposal (cumulative):*

| | | |
|---|---|---|
| Coordination of Printing, Notice Program, (Mailing and Telephones) Set-up and Database Preparation | $25,000.00 | |
| Responding to Claimant Inquiries (Telephone) (17,143 x 3.5 min) ($1 p/min) | 60,000.50 | |
| Satisfying Requests for Proof of Claim and Notice Packets (106,290 @17¢ packet) | 18,069.30 | |
| Processing Consumer and TPP Non-Deficient Claims (47,664 @ $1.35) | 64,346.40 | |
| Processing Consumer and TPP Deficient Claims (49,067 @ $2.00) | 98,134.00 | |
| Quality Assurance/Testing | <u>25,000.00</u> | |
| | | $290,550.20 |
| *Less previously approved Professional Fees:* | | <u>-215.484.75</u> |
| | | **75,065.45** |

*Expenses Incurred June 1, 2002 - May 14, 2005:*

| | | |
|---|---|---|
| Call Center (Attachment B) | $32,968.90 | |
| Federal Express/Postage Charges (Attachment C) | 1,466.72 | |
| Printing Charges (Attachment D ) | 14,451.78 | |
| Website Charges (Attachment E) | 197.13 | |
| Photocopying/Faxing @ $ .20 per page (Attachment F) | 784.60 | |
| Tax Preparation (2001 - 2004) | 1,500.00 | |
| Bank fees and Checks (First Union) | 1,423.95 | |
| Storage | 1,440.25 | |
| PO Box Rental ( 8/1/02 - 7/31/05) | <u>375.00</u> | |
| *Total Expenses Incurred* | | **<u>54,608.33</u>** |

$129,673.78

# EXHIBIT 6

**COMPLETE CLAIM SOLUTIONS, INC.**
319 Clematis Street, Suite 500 ■ West Palm Beach, FL 33401
TEL: (800) 720-5216 ■ (561) 651-7777 ■ FAX: (561) 651-7788

July 25, 2001

**By Fax and Federal Express**

Jennifer Sprengel, Esq.
Miller Faucher
26 Ridgefield
Willowbrook, IL 60521

Bernard Persky, Esq.
Barbara J. Hart, Esq.
Goodkind, Labaton, Rudoff & Sucharow, LLP
100 Park Avenue, 12th Floor
New York, NY 10017

### Re: Warfarin Antitrust Litigation

Dear Jennifer, Barbara and Bernie;

Thank you for providing Complete Claim Solutions, Inc. (CCS) with the opportunity to review the draft Allocation and Distribution Plan (the "Draft Plan"). Pursuant to my conversation with Barbara Hart of July 23, 2001, we are providing the following comments and revised costs estimates concerning the Draft Plan; and the potential "deficiency" process which is being contemplated.

**Our understanding of the Draft Plan:**

➢ The calculation of Recognized Losses will be the same for consumers and Third Party Payors (TPPs): *Total Payments made for Coumadin less amounts received (reimbursements, discounts or rebates) of which only 15% will be allowed or recognized.*

➢ A Preferential Fund (18% of the Net Settlement Fund) will be set up to reimburse consumers first.

➢ Once Recognized Losses for consumers are calculated, if there is sufficient funds to pay 100% of the Recognized Losses to Consumers and unallocated funds remain in the Preferential Fund, the residual funds will "spill-over" to the remaining Net Settlement Fund (the "Remaining Fund") for distribution to TPPs. In this scenario, there will be two separate "pools" or funds to be allocated, with each eligible claimant receiving their share of the respective fund (pool) as it bears to all other eligible claimants in that pool. Very straight-forward, no overlapping of claims.

➢ Once Recognized Losses for Consumers are calculated, if there is **not** sufficient funds to pay 100% of the Recognized Losses to consumers, then the unsatisfied portion of the consumers' Recognized Losses will be prorated, along with TPP's Recognized Losses, against the Remaining Fund (82% of the Net Settlement Fund). All eligible claimants in this pool will be capped at 100% of their Recognized Loss, as in the first scenario, listed above (e.g., if a consumer received a portion of the Recognized Loss in the Preferential Fund, they will receive a portion up to 100% of the unsatisfied portion of their Recognized Loss from the Remaining Fund). In this scenario, a consumer will be paid out of each respective fund (pool), and have a distinct distribution ratio for each pool representing that eligible claimant's Recognized Loss as it bears to all other eligible claimants in each pool. This is a routine program, with added

quality assurance and testing for allocating distributable funds for each pool and the capping requirements.

➢ There are three potential deficient conditions which could exist in a claim: (a) Consumers must provide proof of the most recent prescription or purchase of Coumadin and (b) sign a certification that the amounts provided are true and correct; and (c) filers by or for TPPs, must affirm that they are an authorized agent, the information is true and accurate, submit to the jurisdiction of the court, hold harmless CCS and Class Counsel if amounts were paid to later determined non-authorized claimants, and acknowledge that supporting documentation may be requested by the Settlement Administrator.

➢ It is contemplated that the Settlement Administrator will not apply any judgment as to the content or validity of the attachments/documentation provided by consumers; nor will the Settlement Administrator discriminate against any Class member in any manner in calculating Recognized Losses if the Class member attempted to provide some sort of documentation/explanation in the form of an attachment to the claim. This is certainly easy to implement; an unaccompanied Proof of Claim is deficient on the first pass. Single document TIFs when scanning claims are easily identifiable, and can be programmatically coded, for the sending of deficiency letters. (Data-entered claims are also coded at the time of entry, and will not require further processing costs.)

## Concerns:

Only one. Consumer claims must be easily discernible from TPP claims (color or size), in order to streamline the administration process.

## Revised Summary of Cost:

Attached is our revised breakdown of costs (fees and expenses), which reflect the following:

➢ There are no additional costs in implementing the draft Allocation and Distribution Plan, as outlined above. Handling separate pools of allocable funds, spillovers, and haircuts for allowed or recognized losses are routine and will be encompassed in the calculation program.

➢ There will be certain out-of-pocket expenses associated with the mailing of deficiency letters, e.g. postage, envelopes, mailing and stuffing. We estimate these costs at:

Assuming 200,000 consumer claims are filed, of which 30% are deficient (we estimated a higher historical percentage due to the consumer demographics) will result in 60,000 deficient claims. **The estimated out-of-pocket expenses are $25,000. (34¢ for postage and 5¢ for envelopes, stuffing and mailing.)**

➢ There are no additional costs in processing or coding deficient claims. There would, however, be additional costs for processing incoming mail, associating responses with original claims, and clearing deficient conditions. **We estimate these costs at 65¢ per deficient claim or $39,000.**

➢ Since TPP claims will be calculated using the same methodology as consumer claims, we are adjusting our "per claim" price to be **$1.35 per non-deficient claim, and $2.00 per deficient claim, without regard to the type of claim (consumer or TPP).**

➢ Hourly rates for processing TPP claims have been removed and substituted by item-based fees, as indicated above. However, we have incorporated estimated fees for conducting Quality Assurance reviews for "unreasonable" data provided by TPPs, requesting documentation from TPPs or PBMs if later required, and testing programs.

## Impact of Revised Costs on Overall Administration:

➢ The simplicity and using the same methodology in calculating Consumer and TPP entitlements, as outlined in the Draft Plan, has significantly reduced *claims processing costs*. The Settlement Fund will save approximately $46,000 in implementing this streamlined calculation process.

➢ However, the deficiency process will cost the Settlement Fund approximately $64,000 ($39,000 in fess and $25,000 in out-of-pocket expenses).

➢ The net difference of incorporating both components, a simplified distribution plan and deficiency process, is an increase of $18,000. ($6,000 reduction in fees and $24,000 increase in expenses)

➢ As indicated on our Revised Summary of Costs, total administration fees will be approximately $440,000 and out-of-pocket expenses at approximately $1.925 million, depending on the media campaign you select, for a total cost of approximately $2.37 million or 5% of the Gross Settlement Fund.

## Why CCS?

➢ Our printing and mailing costs are usually the lowest bids.

➢ The TPP database to be used for direct mailing will save the Settlement Fund tens-of-thousands in published notice costs.

➢ Our claims processing costs are competitive, if not less than most claims administration firms.

➢ CCS has worked with several media consultants, including recently Wayne Pines of GCG Communications and APCO Worldwide. Knowing that this is a revenue source for GCG (and not CCS), we have no objection to working with Mr. Pines in this matter through GCG, if counsel is so inclined.

➢ CCS has recently concluded several good size projects; our management and staff are ready to take on this administration. The Warfarin administration will not be lost in layers of sales, management, various project leaders and personnel.

➢ We are simply good at what we do (think big, execute small).

## Revised Summary of Estimated Administration Costs

| Task (CCS Fees) | Quantity | Per Unit | Est Exp |
|---|---|---|---|
| Coordination of Printing, Notice Program, (Mailing and Telephones) Set-up and Database Preparation | | | 25,000 |
| Responding to Claimant Inquiries (Telephone) as indicated above | 10,000 | $1 p/min | 30,000 |
| Satisfying Requests for Proof of Claim and Notice Packets | 300,000 | 17¢ per packet | 51,000 |
| Processing Consumer and TPP Non-Deficient Claims | 140,000 | $1.35 | 189,000 |
| Processing Consumer and TPP Deficient Claims | 60,000 | $2.00 | 120,000 |
| Quality Assurance/Testing | | | 25,000 |
| *Total Fees* | | | **$ 440,000** |
| | | | |
| Tasks (Expenses) | | | |
| Printing Consumer and TPP Claim Packets (5 – 6 page, self-mailer) | 320,000 | 15¢ per packet | $ 48,000 |
| Hotline Services (recorded message, live operator, etc.) | 300,000 calls | See **Att. B** pricing | 636,000 |
| Postage (noticing and checks) | 320,000 | .34¢ | 200,000 |
| Postage, stuffing and mailing (Deficiency Letters | 60,000 | .39¢ | 25,000 |
| Consumer Publications (Various) | Actual | See above pricing | 1,000,000 |
| National Underwriters | Actual | | 3,620 |
| Benefits and Compensation Solutions | Actual | | 4,000 |
| Internet Business Wire | 1x | | 750 |
| Website | Actual | | 3,500 |
| Photocopies, Faxes, misc | Actual | | 2,500 |
| PO Box (1 Year) | 1 x | | 750 |
| *Total Expenses* | | | **$1,924,120** |

*****************

I hope that we have adequately addressed your questions and concerns.  Please feel free to call me should you have any questions.

Very truly yours,

Dawn E. Addazio

DEA:kp